IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DERRICK E. LAND,<br><br>　　Plaintiff,<br><br>vs.<br><br>PENNYMAC LOAN SERVICES, LLC,<br><br>　　Defendant. | Case No.:<br><br>JURY TRIAL REQUESTED |

## COMPLAINT

**NOW COMES** Plaintiff Derrick E. Land and as his Complaint against the above-named Defendant avers as follows:

### PRELIMINARY STATEMENT

This action arises from the acts and omissions regarding the Plaintiff's home mortgage loan which, at relevant times, was serviced by Defendant PennyMac Loan Services, LLC ("PennyMac"). Specifically, PennyMac committed errors with respect to the management of Plaintiff's mortgage escrow account including, but not limited to, failure to make timely payments from the escrow account, failure to properly manage the account and failure to provide meaningful information regarding his escrow account, as well as the imposition of unlawful fees and charges. Plaintiff provided written notification of these errors to PennyMac. PennyMac failed to comply with federal law by failing to timely and adequately respond to Plaintiff's notice, by failing to properly investigate the issues raised by Plaintiff and by failing to make appropriate corrections to the account. PennyMac also failed to provide certain requested information. Defendant's wrongful acts and omissions constitute a breach of the loan documents and multiple violations of federal law. Plaintiff seeks damages, attorney fees and costs for violations of the Real Estate

Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"). Plaintiff also seeks damages for breach of the mortgage and note.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 12 U.S.C. § 2617. This Court also has pendant subject matter jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

2. Venue is proper here because the events giving rise to Plaintiff's cause of action occurred in this district.

## THE PARTIES

3. Plaintiff is an adult resident of Mobile County, Alabama.

4. Defendant PennyMac Loan Services, LLC ("PennyMac") is a limited liability company formed in the State of Delaware, with its principal place of business in California. PennyMac is a "servicer" with respect to Plaintiff's loan as that term is defined at 12 U.S.C. § 2605(i)(2)

## FACTUAL ALLEGATIONS

5. Plaintiff is a 32 year-old automated systems technician. In February 2012, Mr. Land moved to Mobile after serving 2 combat tours with the US Marines. Soon after he returned home, he purchased his home at 2469 Hedge Row Drive in Mobile. In connection with that purchase, Mr. Land obtained a mortgage loan with First Federal Bank in the amount of the loan was $155,142.00.

6. Under the terms of the loan agreement, property insurance premiums and tax payments were required to be paid out of an escrow account maintained by the mortgage company.

7. The loan was serviced by Franklin American Mortgage Company until June 2014, when servicing of the loan was transfer to PennyMac. Upon information and belief, ownership of the loan also transferred to PennyMac at or around the same time.

8. At the time of the transfer to PennyMac, Mr. Land's homeowners insurance was provided through Wilshire Insurance Company ("Wilshire") and the premiums were paid through his mortgage escrow. The policy renewed annually each February. At all times prior to the transfer to PennyMac, the insurance was in place and Mr. Land had fully funded his escrow account as directed by his mortgage company. After it became servicer, PennyMac continued collecting escrow payments.

9. In advance of the renewal premium due February 2015, Wilshire properly billed the mortgage company for the upcoming premium. By the time that premium was due, PennyMac knew or should have known the amount of the premium due, when it was due, how to direct payment and that the insurance premiums were to be paid from the escrow account. As of February 2015, there was a positive escrow balance.

10. PennyMac failed to pay the 2015 renewal premium and Plaintiff's policy lapsed. This resulted in multiple charges imposed on Plaintiff, including a $2,574 charge imposed months later for a lender's placed policy and an escrow deficiency of over $5,000. Land never received any written notice of any lapse of insurance coverage. Moreover, no explanation was given of what happened with the existing escrow balance that was collected to pay the 2015 renewal.

11. Because of PennyMac's added insurance charge and other related fees, Plaintiff's monthly payments drastically increased. In October 2016, Land received a mortgage statement which stated a monthly amount due of $1,382.75. This was an increase of over $600. The

statement also listed, without any explanation whatsoever, an escrow deficiency of $5,049.46. Prior to this notice, he was never notified of any problem whatsoever with the escrow account. At around the same time, PennyMac began charging numerous default-related fees, such as inspection fees and late charges with no legal basis.

12. Mr. Land contacted the mortgage company in an effort to some sensible explanation for the increase in payments and the negative escrow. The explanations provided by PennyMac representatives were inconsistent, incomplete and/or nonsensical. PennyMac representatives refused to provide a complete history of the escrow account. It did provide documents "escrow analysis" reports, but no explanation was given of the reasons for the insurance-related charges and the escrow deficiency. Land also never received any written notice from PennyMac of any lapse of insurance coverage nor did PennyMac provide any explanation of why the lapse occurred.

13. Not only did PennyMac fail to provide any valid explanation for the added charges, in January 2017, it issued a "Notice of Default and Intent to Accelerate" in which threatened to foreclose on Plaintiff's home if all the increased fees and charges were not paid. Plaintiff was forced to pay amounts not owed simply to avoid the threatened foreclosure. The payment was made under protest.

14. By March 2017, the problem remained unresolved, despite Plaintiff's attempts to have the escrow charges corrected and get a sensible explanation for the sudden escrow deficiency. On March 10, 2017, Plaintiff submitted a Qualified Written Request and Notice of Servicing Error ("NOE") to the address designated by Defendant for receipt of such notices. The letter identified the loan, borrower and property and stated as follows:

> I am writing because I believe you are wrongfully charging my loan for amounts I do not owe. Specifically, you are charging my account with a negative

escrow and imposing multiple charges for property inspections and appraisals without any justification.

My loan originated in 2012 with First Federal Bank and the original lender. The loan was set up from the beginning with an escrow account for paying taxes and insurance. You took over the servicing of the mortgage in July 2014. Throughout the course of the loan, the escrow for taxes and insurance has been funded without incident until the Fall 2016. In October 2016, I received a mortgage statement which demanded a monthly payment of $1,382.75. This was an increase of $601.37. That statement also indicated, without any explanation whatsoever, that there was a negative escrow balance of $5,049.46. Prior to this notice, I was never notified of any problem whatsoever with my escrow account or any indication that the balance would be negative. My loan was current.

I have attempted to get some sensible explanation for why I suddenly owe a negative balance in my escrow in excess of $5,000.00 and why my payment increased. The explanations I've received over the phone have been inconsistent, incomplete and/or nonsensical. I was at one point told that you converted my loan to non-escrowing when you took over and that is what caused the negative balance. This makes no sense to me. When I asked for a complete history of my escrow account I was told that your company "can't provide that information." I have received documents titled "escrow analysis" but no explanation has been given for the basis for an imposition of this charge and the rendering of a negative escrow balance. I've never received written notice of any lapse of insurance coverage and all of the insurance premiums were to be paid through an escrow and it has always remained, since you've serviced my loan, your obligation to make those payments in a timely manner and avoid any lapse. It appears to me that there may have been a failure on your part to timely pay my insurance premiums out of the escrow and that failure resulted in a lapse. I believe you then you retroactively charged my escrow account for covering that lapse, even though coverage was resumed and there have been no claims during the lapse period.

You have also have sent me notices falsely stating that my loan is in default and that multiple fees have been imposed, including inspection fees, even when the account has not been in arrears.

You are holding me in default because of your mistake and then you threatened to foreclose on my home. This has caused a great deal of stress. It has also caused me to pay you amounts I do not owe just to avoid a foreclosure on my home. By a separate mailing, I have paid you all of the false and inflated amounts you claim I owe. I do not owe these sums and I have not been given any sufficient explanation of why these additional charges have been imposed upon me.

Please investigate this matter and make all necessary and appropriate corrections to my account. This should include either a refund or credit of the money overpaid by me. It should also include a thorough explanation of why these

charges were imposed and a confirmation that my loan is current, with no escrow shortage.

In addition, provide the following information:

1. Explanation of every disbursement made by you out of my escrow since July 2014, including the amounts, dates and purpose for the disbursements;

2. A complete explanation and itemization of the $5,049.46 negative escrow amount which appeared on my October and November 2016 mortgage statements;

3. A complete explanation of why my payments increased to $1,382.75;

4. If you contend there was any lapse of insurance coverage, state the dates of the lapse and whether I was charged for the lapse;

5. Identify any lender placed insurance policy I have been charged for, stating the dates of coverage, the amounts charged, the insurance company, whether you received any portion of the amount charged me for the policy and whether you own or are affiliated with the insurance company;

6. Identify each and every fee charged to me for inspections, BPOs, property preservation or appraisal. Identify the fees by date, amount and entity which performed the service. Also, explain the basis for charging the fees and whether you contend my loan was in default at the time the fees were charged;

7. A complete payment history of my loan including an explanation of how my payments have been applied, all fees imposed and identification of any months for which you claim you did not receive payment; and

8. The name of the entity which owns my loan.

I look forward to hearing back from you.

15. This letter constitutes a Notice of Servicing Error ("NOE") for purposes of Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

16. Plaintiff's NOE was sent, via certified mail, to the address designated by PennyMac for receipt of QWRs and NOEs.

17. PennyMac responded to the NOE by letter dated May 16, 2017, over 60 days after it received Land's NOE. PennyMac's response fails to state, one way or the other, whether an error occurred. Instead, it addressed the issue in vague terms, including the statement "[O]ur records indicate that there was inconsistent information regarding insurance coverage for your account." The letter stated that an "adjustment" was made to include insurance in the escrow account. However, the escrow was required (and maintained) on the loan since origination and any failure on PennyMac's part to recognize that basic fact and properly manage the escrow was a servicing error. Although the letter goes on to promise that certain credits and adjustments will be made, Plaintiff has not received credit for all the insurance-related charges. Moreover, without any explanation of whether PennyMac determined that an error occurred and a thorough explanation of what happened Plaintiff has received no assurance that the error that led to the lapse has been corrected or that future errors concerning the escrow will be avoided.

18. PennyMac has also failed to provide information and documents requested including, but not limited to, a complete pay history and statement of all fees imposed.

19. PennyMac failed to provide a timely or adequate response to the Plaintiff's NOE as required under RESPA Section 2605(e) and 12 C.F.R. § 1024.35. Specifically, PennyMac failed to conduct a reasonable investigation, failed to make the corrections that any reasonable investigation would have revealed were appropriate and failed to provide any information regarding the NOE. Moreover, PennyMac failed to provide the information required by 12 C.F.R. § 1024.35(e)(B).

20. Plaintiff has suffered actual damage as a proximate result of PennyMac's failure to recognize and properly manage the escrow account, its failure to timely pay premiums out of the escrow account, its failure to properly investigate Plaintiff's NOE, its failure to make necessary

corrections and its failure to provide the information and documents requested. These damages in include, but are not limited to the incurring of fees and escrow charges in addition to those legally owed, increased charges and expenses resulting from the insurance lapse, and expenses related to Plaintiff's attempts to have the errors corrected. Plaintiff also suffered worry and stress from false claims by the Defendant that he was in default of the mortgage, owed a large negative escrow balance and in danger of ultimately losing his home.

## COUNT I
## (VIOLATIONS OF RESPA)

21. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

22. Defendant's acts and omissions as alleged herein constitute multiple violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 – 17. Plaintiff has suffered actual damages as a proximate result of Defendant's RESPA violations.

23. Plaintiff's mortgage is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1).

24. Defendant PennyMac is a "servicer" with respect to Plaintiff's loan as that term is defined in 12 U.S.C. § 2605(i)(2).

25. Defendant's failure to make time payments for insurance premiums necessary to avoid a lapse constitutes a violation of 12 U.S.C. § 2605(g).

26. RESPA grants borrowers the right to submit a "qualified written request" ("QWR") to the loan servicer requesting information and documents pertaining to the servicing of her loan. That provision and its implementing regulations also grant borrowers the right to submit a "notice of servicing error" ("NOE"), identifying perceived errors committed by the servicer. 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

27.     A QWR and NOE must sufficiently identify the borrower, the account and the perceived servicing error. Id.

28.     Recognizing the prevalence of servicing errors and the damage they can cause American families if not corrected, the federal Consumer Finance Protection Bureau in 2013 promulgated new regulations which clarified the borrower's rights to have errors corrected and the servicer's duties in responding to a notice of servicing error. 12 C.F.R. § 1024.35. These new regulations became effective January 10, 2014. At all times, PennyMac was fully aware of these regulations and the requirements for responding to NOEs.

29.     Under Section 2605(e) and the implementing regulations, servicers must take the following actions upon receipt of a QWR and/or NOE:

- Provide a written acknowledgment of the correspondence within five days of the servicer's receipt of the QWR;

- Within 30 days conduct a reasonable investigation of the errors identified in the borrower's notice and make all appropriate corrections to the account and provide the borrower with written explanation of the corrections made, the effective date of the correction and contact information for further assistance;

- If, after reasonable investigation, the servicer determines that no error was committed, it must, within 30 days of receipt of the notice, provide the borrower with a written explanation of reasons for its determination, a statement of the borrower's right to request documents relied on by the servicer in reaching its determination and contact information for further assistance; either the reason for the servicer's belief that the account is being serviced correctly or a description of the changes made; and

- If a servicer determines that it is not required to comply with these requirements then it must, within five days after receipt, provide written notice to the borrower setting forth the reasons for such determination.

30.     In addition to these requirements, the 2010 amendments to RESPA added additional "servicer prohibitions." 12 U.S.C. § 2605(k). Under these prohibitions, a servicer may not:

- Obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance. 12 U.S.C. § 2605(k)(A);

- Charge fees for responding to valid qualified written requests or notices of servicing errors. 12 U.S.C. § 2605(k)(B);

- Fail to take timely action to respond to a borrower's notice of servicing error relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties. 12 U.S.C. § 2605(k)(C);

- Fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan. 12 U.S.C. § 2605(k)(D); or

- Fail to comply with any other obligation imposed under the implementing regulations. 12 U.S.C. § 2605(k)(E)

12 U.S.C. § 2605(k).

31.     Plaintiff's March 10, 2017 letter constitutes a "Qualified Written Request" ("QWR") and a "Notice of Servicing Error" ("NOE") within the meaning of 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

32.     PennyMac has violated 12 U.S.C. § 2605(e) by failing to properly respond to Plaintiff's QWR and NOE and to make appropriate corrections to the account as required under that section and Reg. X. Specifically, PennyMac failed to conduct any reasonable investigation of the errors described in Plaintiff's letter and failed to refund monies wrongfully collected or refund credits. This is also a violation of Section 2605(e) and its implementing regulations.

33.     PennyMac has also violated 12 U.S.C. § 2605(k) in at least the following ways:

- Obtaining force-placed hazard insurance, and imposing charges for same, without any reasonable basis to believe that Plaintiff failed to comply with the loan contract's requirements to maintain property insurance.

- Failing to take timely action to respond to Plaintiff's notice of servicing error; and

- Failing to comply with the requirements set out in Reg. X regarding responding to a QWR and a NOE, conducting an investigation of servicing errors and correcting errors.

34. Plaintiff has suffered actual damages, including emotional distress and mental anguish, as a proximate result of PennyMac's failure to comply with Section 2605(e) and (k). Any reasonable investigation of Plaintiff's notice of error would have determined, at a minimum, that PennyMac failed to properly recognize and manage the escrow account when the servicing was transferred; that a lapse occurred due to its own failure to timely pay the premiums; that Plaintiff had not failed to maintain insurance; that charges and fees were imposed as a result of the lapse and that other fees and charges were imposed without any legal basis. Any appropriate correction of the servicing errors would have included, at a minimum, full reversal and credit of all charges and fees imposed as a result of the lapse and failure to properly maintain the escrow account; correction of any adverse credit reporting that resulted from the lapse and immediate correction of the escrow account. The failure by PennyMac to provide these corrections constitutes actual damages resulting from PennyMac's violation of Section 2605(e) and Reg. X.

35. PennyMac has engaged in a pattern and practice of acts and omissions which violate Section 2605(e) sufficient to allow recovery of statutory damages under Section 2605(f). This pattern is reflected in the facts and multiple RESPA violations described herein. Upon information and belief, PennyMac has also engaged in a pattern and practice of violative acts and omissions relating to mortgage loans other than Plaintiff's. This information and belief is supported by the judicial and administrative complaints made by borrowers, including but not limited to those complaints reflected in <u>Moody v. PennyMac Loan Servs., LLC</u>, In the U.S. District Court of New Hampshire, Case No. 16-CV-021-JL and <u>Bucy v. PennyMac Loan Servs., LLC</u>, In the U.S. District Court for the Southern District of Ohio, Case No. 15-CV-2909; as well as the multiple consumer

complaints relating to escrow mismanagement and PennyMac's failure to provide requested information or correct servicing errors. These administrative consumer complaints which were received by the federal Consumer Finance Protection Bureau and information pertaining to the complaint is made available through the Bureau's website - www.consumerfinance.gov.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against PennyMac for each violation of RESPA, awarding the following relief:

A. Statutory and actual damages as provided in 12 U.S.C. § 2605(f);

B. Reasonable attorney's fees, and costs expended in this proceeding; and

C. Such other and further relief as the Court may deem just and proper.

## COUNT II
## (BREACH OF MORTGAGE AND NOTE)

36. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein

37. The acts and omissions made by Defendant, as alleged herein, constitute a breach of the mortgage agreement and note. These acts and omissions include, but are not limited to, mismanagement of funds paid into escrow for insurance as required by the mortgage terms; failure to timely pay insurance premiums from the escrowed funds; wrongfully force-placing insurance in the absence of any lapse caused by the Plaintiff and without required notices; the failure to apply payments tendered by Plaintiff in accordance with the promissory note and mortgage and demanding sums not owed. In addition to violating the express provisions of the mortgage, Defendant violated the implied duty of good faith and fair dealing.

38. Plaintiff has suffered damage as a proximate result of the said breach.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against PennyMac for breach of the mortgage and note, and award him compensatory damages, including damages for

mental anguish and emotional distress, plus interest and costs.  Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

**TRIAL BY JURY IS HEREBY REQUESTED AS TO ALL CLAIMS AND DEFENSES ASSERTED HEREIN.**

                                              KENNETH J. RIEMER (RIEMK8712)
                                              Underwood & Riemer, P.C.
                                              Attorney for Plaintiff
                                              166 Government Street, Suite 100
                                              Mobile, Alabama 36602
                                              Phone: 251.432.9212
                                              Email: kjr@alaconsumerlaw.com

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL AS FOLLOWS:**
**PennyMac Loan Services, LLC**
**c/o CT Corporation System**
**2 North Jackson Street, Suite 605**
**Montgomery, Alabama 36104**